# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CIVIL NO. 5:18-CV-112-KDB

| | |
|---|---|
| JOSEPH A. PRESTWOOD,<br>　　　Plaintiff,<br><br>　　　　vs.<br><br>ANDREW M. SAUL,[1]<br>Acting Commissioner of Social Security<br><br>　　　Defendant. | )<br>)<br>)<br>)　　ORDER<br>)<br>)<br>)<br>)<br>)<br>) |

**THIS MATTER** is before the Court on Plaintiff's "Motion for Summary Judgment" (Doc. No. 10) and Defendant's "Motion for Summary Judgment" (Doc. No. 14), as well as the parties' briefs and exhibits. Plaintiff, through counsel, seeks judicial review of an unfavorable administrative decision on his application for Supplemental Social Security Income ("SSI").

Having reviewed and considered the written arguments, administrative record, and applicable authority, and for the reasons set forth below, Plaintiff's Motion for Summary Judgment is **DENIED**; Defendant's Motion for Summary Judgment is **GRANTED**; and the Commissioner's decision is **AFFIRMED**.

## I.  PROCEDURAL HISTORY

The Court adopts the procedural history as stated in the parties' briefs.

Having exhausted his administrative remedies, Plaintiff now seeks judicial review of the decision pursuant to 42 U.S.C. § 405(g).  Plaintiff filed the present action on July 12, 2018.

After reviewing Plaintiff's record and conducting a hearing, the ALJ found that Plaintiff

---

[1] Andrew M. Saul is now the Commissioner of Social Security and substituted as a party pursuant to Fed. R. Civ. P. 25(d).

did not suffer from a disability as defined in the SSA. (Tr. 773).[2] In reaching his conclusion, the ALJ used the five-step sequential evaluation process established by the Social Security Administration for determining if a person is disabled. The Fourth Circuit has described the five-steps as follows:

> [The ALJ] asks whether the claimant: (1) worked during the purported period of disability; (2) has an impairment that is appropriately severe and meets the duration requirement; (3) has an impairment that meets or equals the requirements of a listed impairment and meets the duration requirement; (4) can return to her past relevant work; and (5) if not, can perform any other work in the national economy.

*Radford v. Colvin*, 734 F.3d 288, 290-91 (4th Cir. 2013) (paraphrasing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant has the burden of production and proof in the first four steps. *Pearson v. Colvin,* 810 F.3d 204, 207 (4th Cir. 2015). However, at the fifth step, the Commissioner must prove that the claimant is able to perform other work in the national economy despite her limitations. *See id.*; *see also* 20 C.F.R. § 416.960(c)(2) (explaining that the Commissioner has the burden to prove at the fifth step "that other work exists in significant numbers in the national economy that [the claimant] can do").

The ALJ found that Plaintiff had not engaged in substantial gainful activity since April 24, 2014 (Tr. 18, Finding 1). The ALJ found Plaintiff to have the following severe impairments: "degenerative disk disease of the lumbar and cervical spine; diabetes with peripheral neuropathy; obesity; depression; anxiety; obsessive-compulsive disorder; and left hand carpal tunnel syndrome" (Tr. 18, Finding 2). The ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in the Administration's regulations. (Tr. 18-21). Therefore, the ALJ examined the evidence of

---

[2] Citations to the administrative record filed by the Commissioner are designated as "Tr."

Plaintiff's impairments and made a finding as to the Plaintiff's Residual Functional Capacity (RFC). In pertinent part, the ALJ found the Plaintiff:

> has the [RFC] to perform light work as defined in 20 CFR 416.967(b) except the claimant is able to frequently climb ramps and stairs; frequently climb ladders, ropes or scaffolds; frequently balance, stoop, kneel, crouch and crawl; frequently reach with the left upper extremity; occasionally handle, finger and feel with the left hand; is unable to read written instructions and would require verbal instructions to perform tasks; and should have no exposure to unprotected heights, moving mechanical parts, and hazardous work settings; and should never be exposed to dust, odors, fumes or pulmonary irritants. The claimant is able to perform simple, routine and repetitive tasks; must be in a work setting with a low level of pressure, defined as work not requiring multitasking, significant independent judgment, production rate pace, or team work to complete a task. The claimant is able to understand, remember and follow simple instructions; is able to make simple work-related decisions; and is able to respond appropriately to supervision. The claimant should have only occasional interaction with supervisors and coworkers and no more than superficial interaction with the public. The claimant is able to tolerate occasional changes in the work setting.

(Tr. 21, Finding 4). The ALJ detailed extensively the evidence considered in formulating the RFC (Tr. 21-39). The ALJ found the Plaintiff not disabled at Step Four of the sequential evaluation process based upon the established RFC and the vocational expert's (VE) testimony that Plaintiff would not be able to perform his past relevant work (PRW) as a material handler, a maintenance mechanic helper and as an arc welder. (Tr. 40, Finding 5). Alternatively, at Step Five of the evaluation process, the ALJ, pursuant to VE testimony, found Plaintiff, given the limitations embodied in his RFC, would be able to perform jobs that existed in significant numbers in the national economy such as small products assembler, a bagger and as a marker. (Tr. 40-41).

## II. <u>STANDARD OF REVIEW</u>

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); and (2) whether

the Commissioner applied the correct legal standards. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *see also Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The District Court does not review a final decision of the Commissioner de nov*o*. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In *Smith v. Heckler*, 782 F.2d 1176, 1179 (4th Cir. 1986), quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971), the Fourth Circuit defined "substantial evidence" thus:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*See also Seacrist v. Weinberger*, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. *Hays v. Sullivan*, 907 F.2d at 1456 (4th Cir. 1990); *see also Smith v. Schweiker*, 795 F.2d at 345; and *Blalock v. Richardson*, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome – so long as there is "substantial evidence" in the record to support the final decision below. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982).

## III. DISCUSSION

The question before the ALJ was whether Mr. Prestwood became disabled at any time.[3] Mr. Prestwood contends the ALJ erred in basing a finding on a "defective" hypothetical question to the vocational expert ("Plaintiff's Memorandum …" at 8-9) (Doc. No. 15) and the vocational expert testimony conflicts with the Dictionary of Occupational Titles (DOT) (Plaintiff's Memorandum 9-12). Mr. Prestwood also challenges the ALJ's assessment of two specific physical impairments (Plaintiff's Memorandum 13-14) and the ALJ's assessment of his mental impairments (Plaintiff's Memorandum 12-19).

When the ALJ poses hypothetical questions to a vocational expert, the questions must be based on a consideration of all of the evidence and must fairly set out all of the claimant's impairments. *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). Yet the ALJ "has great latitude in posing hypothetical questions and is free to accept or reject suggested restrictions so long as there is substantial evidence to support the ultimate question." *Koonce v. Apfel*, 166 F.3d 1209, 1999 WL 7864, at *5(4th Cir. Jan. 11, 1999) (unpublished). Mr. Prestwood contends the hypothetical questions posed to the vocational expert were defective because it omitted his inability to read written instructions. The transcription of the hearing indicates the ALJ asked the vocational expert about an individual who was "*able* to read written instructions and would require verbal instructions to perform tasks" (Tr. 120 (emphasis added)). Although it is unclear whether

---

[3]Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an:

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .
*Pass v. Chater*, 65 F. 3d 1200, 1203 (4th Cir. 1995).

the ALJ really misspoke at the hearing, his stating "*and* [the individual] would require verbal instructions to perform tasks" (Tr. 21, 120 (emphasis added)) only makes sense if the ALJ is asking about an individual who is unable to read written instructions. Neither the vocational expert nor Mr. Prestwood's representative sought clarification from the ALJ (Tr. 120-123). So it appears that everyone at the hearing understood the ALJ to be asking just what the ALJ found in his decision: that the hypothetical individual was unable to read written instructions but could perform the tasks required if they were communicated by verbal instructions. The ALJ asked about jobs that require verbal instructions (Tr. 120) and found that Mr. Prestwood could understand verbal instructions (Tr. 21). Mr. Prestwood himself testified that he had received verbal instructions in his prior work (Tr. 22 (citing Tr. 94)) and that his problem with a two-step task was boredom, not an inability to comprehend or remember (Tr. 23 (citing Tr. 110)).

Mr. Prestwood also contends that the vocational expert's testimony conflicts with the DOT and the ALJ did not inquire into the apparent conflict or obtain a reasonable explanation resolving it. The vocational expert testified that Mr. Prestwood would be able to perform jobs that existed in significant numbers in the national economy such as small products assembler, a bagger and as a marker. (Tr. 40-41, 122). Mr. Prestwood challenges the consistency of the RFC and the general education development reasoning levels of the occupations of small products assembler and a marker as being SVP level of 2. Recently, the Fourth Circuit decided *Lawrence v. Saul,* No. 18-1112, __F.3d__, 2019 WL 5445048 (4th Cir. Oct. 24, 2019), confirming that there is no apparent conflict within the meaning of Social Security Ruling (SSR) 00-4p between a residual functional capacity for the "simple, routine, repetitive tasks of unskilled work" and the definition of reasoning level two in the Dictionary of Occupational Titles (DOT). "To assess whether an apparent

conflict exists," the court "compare[s] the DOT's 'express language' with the vocational expert's testimony." *Lawrence*, 2019 WL 5445048, at *3 (quoting *Thomas v. Berryhill*, 916 F.3d 307, 313 (4th Cir. 2019), and *Pearson v. Colvin*, 810 F.3d 204, 209 (4th Cir. 2015)). While "short" functions are inconsistent with "detailed" ones, there is "no comparable inconsistency" between "simple, routine, repetitive" work functions and the definition of reasoning level two. *Id*. In "finding no apparent conflict between 'simple, routine, repetitive' and Level 2 reasoning," the *Lawrence* court confirmed that it was "join[ing] every other circuit to consider the issue" and cited examples of cases finding no conflict between reasoning level two and limitations to simple tasks or simple work. *Id*. at *3 n.8.

The DOT defines the occupation of bagger as involving a reasoning level of one, which requires only the ability to "[a]pply commonsense understanding to carry out simple one- or two-step instructions [and to d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job." *Bagger,* DOT # 920.687-018, 1997 WL 687965. The vocational expert testified, and Mr. Prestwood does not dispute, that there are 713, 100 bagger jobs in the national economy, which is a significant number (Tr. 41, 122); *see* 20 C.F.R. § 416.920(g); SSR 00-4p 2000 WL 1898704, at *2; *Cogar v. Colvin*, No. 3:13-cv-380-FDW, 2014 WL 1713795, at *7 (W.D.N.C. Apr. 30, 2014)(citations omitted) ("The Fourth Circuit has previously found as few as 110, 153, and even 650 jobs significant enough to satisfy the Commissioner's burden").

Mr. Prestwood also challenges the ALJ's assessment of two specific physical impairments (Plaintiff's Memorandum 13-14) and the ALJ's assessment of his mental impairments (Plaintiff's Memorandum 12-19). In quite a lengthy review, the ALJ penned 18 pages discussing the record

7

and his assessment of the evidence therein (Tr. 22-39).  The ALJ considered and discussed Mr. Prestwood's subjective statements at both the hearing and in reports submitted to the agency as to the limiting effects of his impairments (Tr. 22-23); objective treatment notes documenting treatment for numerous physical and mental ailments (Tr. 23-33); and opinion evidence from at least 13 different medical and other sources, including Mr. Prestwood's treating doctors and counselors, non-examining consultants, family members, and another ALJ who reviewed an earlier claim (Tr. 33-39).  Despite this lengthy review, Mr. Prestwood claims that the ALJ did not consider his sleep apnea and his injury to his right elbow.  There is a single citation to a polysomnography report that noted the possibility of "mild sleep apnea" (Plaintiff's Memorandum 13 n.62 (citing Tr. 813, 851-855)) and a reference to "sleep problems" in a single treatment note (Plaintiff's Memorandum 13 n.63 (citing Tr. 876)) but nothing that speaks to actual functional limitations.  Mr. Prestwood has not established any such loss and the ALJ stated that he considered the entire record but he is not required to discuss every treatment note. *See Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014).

Likewise, Mr. Prestwood claims a right elbow tendon tear suffered in early 2015 while moving a couch causes him limitations but he has failed to establish any actual functional limitation from the injury (Plaintiff's Memorandum 13 n.65 (citing Tr. 807, 810, 1012-13, 1016, 1019-21, 1024)).  The ALJ noted that despite some pain and tenderness, Mr. Prestwood had "good range of motion" of the elbow and normal motor function in the arm when he presented to an orthopedist in March 2015 (Tr. 30 (citing Tr. 1016)).  The ALJ also noted that a musculoskeletal exam in mid-2016 revealed "full range of motion" with no abnormalities in the elbows (Tr. 31 (citing Tr. 838)).  The ALJ noted that Mr. Prestwood reported, in late 2016, that

his "primary concern" was neuropathy (Tr. 31 (citing Tr. 879)), and made no mention of any difficulty with his elbow and a musculoskeletal exam revealed full strength and a "normal" right upper extremity (Tr. 876-79). Furthermore, the ALJ noted similar normal musculoskeletal exams from December 2016 and February 2017 (Tr. 32 (citing Tr. 886,998)). Clearly, the ALJ did not fail to consider the effects of Mr. Prestwood's right elbow injury. To the contrary, the ALJ discussed the record and found that it did not establish a need for functional limitation in Mr. Prestwood's right arm.

Mr. Prestwood asserts that the ALJ failed to give adequate consideration to Dr. Cappelletty's 2014 assessment or to explain why the 2015 assessments from Ms. Austin were due little weight (Plaintiff's Memorandum 14-19, Tr. 703-08, 757, 762-63, 765). However, Mr. Prestwood disregards the ALJ's careful consideration of the evidence, including from Dr. Cappelletty and Ms. Austin, relating to his mental impairments and cognitive functioning.

In reviewing the record evidence relating to Mr. Prestwood's mental functioning, the ALJ noted, among other things, that Mr. Prestwood underwent two consultative psychological exams by Jessica Medford, Psy.D., in August 2013 and in June 2014 (Tr. 25, 34 (citing Tr. 466-70)), Tr. 27, 34 (citing Tr. 668-72)). The ALJ noted from Dr. Medford's opinion that Mr. Prestwood had no major difficulties with attention and concentration, and that while he appeared to have borderline intelligence, that there was some evidence of possible malingering, including in his responses to basic questions such as the year (Tr. 25, 34 (citing Tr. 468-69)), Tr. 27, 34 (citing Tr. 670-72)). The ALJ further noted Dr. Medford's opinions that despite his mental limitations and difficulty relating to others, Mr. Prestwood appeared able to understand, retain, and follow instructions and to sustain attention to perform simple repetitive tasks (Tr. 34 (citing Tr. 469-70,

9

672)). The ALJ also observed that two State agency psychological consultants had opined that, despite a long list of severe mental impairments that caused some distractibility, a slowed work pace, and social limitations (Tr. 169, 201), Mr. Prestwood remained able to understand and remember short and simple instructions and carry out simple tasks for two-hour periods over an eight-hour workday at a non-productive pace in a work environment with minimal social demands (Tr. 35 (citing 178-80, 207-09)). The ALJ gave these opinions "some weight" as they had not examined Mr. Prestwood but they were able to review the medical records and their opinions were generally consistent with Dr. Medford's (Tr. 35).

The ALJ indeed considered the 2014 neuropsychological assessment conducted by Dr. Cappelletty (Tr. 34-35 (citing Tr. 703-08)). The ALJ noted Dr. Cappelletty's explanation that Mr. Prestwood's test scores indicated he was of at least average intelligence but were also "highly suggestive of neurocognitive impairment seen in individuals with a severe learning disability and in individuals who suffered neurocognitive declines due to damage or injury" (Tr. 34-35 (citing Tr. 705-06)). Dr. Cappelletty opined that Mr. Prestwood "would become extremely frustrated with verbal direction" and that he would find it difficult to synthesize multiple pieces of information (Tr. 34-35 (citing Tr. 707)), but that he "would do well in situations where he does not have to communicate with others on an ongoing basis" (Tr. 706). The ALJ gave them some weight (Tr. 35) and included a number of specific and severe limitations in the RFC, such as the complexity of tasks he would be asked to manage, the amount of decision-making he would have to engage in, and the extent of social interaction that would be involved (Tr. 21). The ALJ certainly considered Dr. Cappelletty's assessment of the impact of Mr. Prestwood's impairments.

The ALJ found Ms. Austin's assessments to be less persuasive than Dr. Cappelletty's.

The ALJ found that Ms. Austin counseled Mr. Prestwood during the period at issue (Tr. 26, 29, 30, 32 (citing Tr. 673-88, 894, 896-928)) and that during these visits, Mr. Prestwood reported obsessive-compulsive behaviors regarding fear of exposure to chemicals and recurrent thoughts, impulses, or images that caused anxiety (Tr. 29 (citing Tr. 900)). However, Mr. Prestwood was also seen by other mental health providers during the same period and demonstrated an adequate mood, affect, memory, judgment and insight, average intelligence (Tr. 29 (citing, e.g., Tr. 775-76, 788-89)), and intact attention and concentration (Tr. 30 (citing Tr. 821).

The ALJ acknowledged and discussed at length the opinion letters and check-box form that Ms. Austin submitted in mid-2015 (Tr. 36-37 (citing Tr. 757, 762-63, 765)) but he explained that those assessments, which were not "medical opinions" under the regulations, were inconsistent with the overall record (Tr. 37) and were even inconsistent with Ms. Austin's own notes which documented no memory impairment a few months after the opinion evidence at issue (Tr. 30 (citing Tr. 898)). Thus, the ALJ explained that Ms. Austin's assessments were inconsistent with the record as a whole, and, therefore he gave them little weight (Tr. 37); *see* 20 C.F.R. § 404.1527(c)(3)-(4) (noting that the ALJ should consider the extent to which an opinion is supported by relevant evidence and the consistency of the opinion with the record as a whole); *cf. Craig*, 76 F.3d at 590 (noting that even an opinion from a treating source, if "not supported by clinical evidence or if … inconsistent with other substantial evidence … should be accorded significantly less weight").

## IV. CONCLUSION

A reasonable mind would find that the evidence is adequate to support the ALJ's decision. The decision of the ALJ, therefore, is hereby **AFFIRMED**, Plaintiff's "Motion for Summary

Judgment" (Doc. No. 10) is **DENIED**; Defendant's "Motion for Summary Judgment" (Doc. No. 14) is **GRANTED**.

**IT IS SO ORDERED.**

Signed: December 12, 2019

Kenneth D. Bell
United States District Judge